UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| CHARLES KERR, : | : | |
| Plaintiff, | : | No. 3:21-cv-93 (KAD) |
| | : | |
| v. | : | |
| | : | |
| COOK, et al., | : | |
| Defendants. | : | |
| | : | |

**INITIAL REVIEW ORDER**

Plaintiff, Charles Kerr ("Kerr"), currently confined at Osborn Correctional Institution, brings this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against ten defendants: former Commissioner of the Department of Correction Cook, current Commissioner Quiros, Warden Rodriguez, Deputy Warden Thibeault, Warden Guadarama, Deputy Warden Vasquez, Dr. Wright, Dr. Fury, Osborn medical staff, and Senator Christopher Murphy.  Kerr asserts federal and state law claims arising out of the Department of Correction's response to the COVID-19 pandemic.  He seeks damages as well as declaratory and injunctive relief from the defendants in their individual and official capacities.  The complaint was filed on January 20, 2021.  Kerr's motion to proceed *in forma pauperis* was granted on January 27, 2021.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *Id.*  In reviewing a *pro se* complaint, the Court must

assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

In February 2020, the Department of Correction ("DOC") became aware that the COVID-19 virus was present at Osborn Correctional Institution ("Osborn"). Doc. No. 1 ¶ 15. Around February 20, 2020, the State of Connecticut declared a state of emergency regarding the virus. *Id.* ¶ 16. In late February 2020, the Centers for Disease Control ("CDC") issued a notice to all states regarding the most vulnerable populations, which included prisoners, and guidelines for all persons to follow. *Id.* ¶ 17.

Osborn is an old facility lacking up-to-date infrastructure and ventilation systems. *Id.* ¶ 18. The defendants were aware of the hazardous living conditions and infection rate at Osborn but adopted a policy of leaving inmates to fend for themselves. *Id.* Kerr was housed in Loft #2, a game room converted to a dormitory for 72 inmates. *Id.* ¶ 19. Loft #2 has no ventilation system or open windows for air circulation. *Id.*

On March 3, 2020, Kerr submitted requests to defendants Rodriguez, Wright, and Fury

asking to be moved to a cell where he would have to deal with only one other inmate. *Id.* ¶ 20. He received no responses. *Id.* On March 10, 2020, after some inmates were showing symptoms of the virus, Kerr wrote to defendants Wright, Fury, and the medical unit asking to be moved to a cell, again without response. *Id.* ¶ 21.

On March 11, 2020, Kerr wrote to defendants Thibeault, Rodriguez, and the medical unit, about his past lung surgery which makes him more vulnerable to the virus. *Id.* ¶ 22. He asked to be moved to a cell so he could practice social distancing. *Id.* Several inmates went to the medical unit in the following days and did not return because they had contracted COVID-19. *Id.*

In mid-March, the CDC recommended cancelling gatherings of 50 persons, and the White House recommended cancelling gatherings of 10 persons. *Id.* ¶¶ 23-24. On March 16. 2020, defendants Rodriguez and Thibeault announced a facility lockdown because COVID-19 had been detected at Osborn and discouraged gatherings of ten or more inmates. *Id.* ¶ 25. These defendants did not alter the living arrangements in Loft #2. *Id.* Kerr submitted multiple requests to all defendants but received no responses. *Id.* ¶ 27.

Kerr is 64 years old. *Id.* ¶ 28. In 2018 he underwent two surgeries to remove the upper lobes of both lungs. *Id.* He has difficulty breathing, high blood pressure, and, in 2019, suffered a stroke. *Id.* The only response he received to his letters to all defendants conveying this information was a correctional officer giving him a small bar of soap and telling him to wash his hands five times a day. *Id.*

Nine of the thirteen inmates who died in the eight months prior to filing the complaint were from Osborn. *Id.* ¶ 35. Kerr contends that, although some parts of Osborn have been

condemned, correctional officials will not close the facility because it contains a prison industry that generates millions of dollars for the contractors. *Id.* ¶ 36.

**Discussion**

Kerr asserts the following federal claims: (1) all defendants were deliberately indifferent to his medical needs by failing to respond to his requests to be moved to a cell and failing to follow prescribed guidelines to mitigate spread of the virus in violation of his First and Eighth Amendment rights; (2) all defendants subjected Kerr to cruel and unusual punishment by exposing him to COVID-19; and (3) all defendants except Senator Murphy failed to protect Kerr from exposure to COVID-19 by keeping him in Loft #2 despite knowing his medical history. He also asserts a state law claim for intentional infliction of emotional distress.[1]

**Senator Murphy**

Kerr names Senator Murphy as a defendant. He alleges in conclusory fashion that Senator Murphy was acting under color of state law. He also alleges that he wrote to Senator Murphy but did not receive a response. Senator Murphy, as United States Senator is not a state employee or a correctional official. Kerr apparently assumes that Senator Murphy has some

---

[1] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to conduct a prompt initial screening to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

supervisory authority over the Department of Correction. This is incorrect and any claims purportedly brought against Senator Murphy in such a supervisory capacity are DISMISSED.[2]

**COVID-19 Response**

Although Kerr asserts three separate federal claims and references several constitutional amendments, all three claims challenge the defendants' response to the pandemic and are, essentially, Eighth Amendment claims for housing him under conditions that showed deliberate indifference to health and safety. Thus, the court considers all three federal claims together.

To state an Eighth Amendment claim for unconstitutional conditions of confinement, Kerr must allege facts supporting an objective element—that "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities"—and a subjective element—that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted). To satisfy the subjective component, Kerr must allege that the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk

---

[2] Even if Kerr's assumption was accurate or that there was some theory under which such oversight might be attributed to Senator Murphy, Kerr has still not stated a plausible claim against Senator Murphy. The Second Circuit has recently clarified the standard to be applied to a claim of supervisory liability. *Tangreti v. Bachman*, 983 F.3d 609 (2d Cir. 2020). The Second Circuit adopted the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). To support his Eighth Amendment claims relating to confinement under conditions that pose a serious risk to his health, Kerr must show that Murphy "personally knew of and disregarded an excessive risk" to Kerr's health by failing to take action to mitigate or prevent against those known risks. *Id.* at 619 (citations and internal quotation marks omitted). Kerr alleges only that he sent letters to Senator Murphy. This is wholly inadequate to demonstrate that Senator Murphy, by his own conduct, was personally involved in the alleged constitutional deprivations. Accordingly, any claims against Senator Murphy can be dismissed on this basis as well. *See* 28 U.S.C. § 1915A(b)(1).

by failing to take corrective action. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185096 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and ... dr[ew] that inference").

Under the objective component, there is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 994 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The court makes this determination in light of the steps the facility has already taken to mitigate the danger. *Id.*

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts have found that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200-01 (E.D.N.Y. 2020) (citing cases). Thus, Kerr's allegations satisfy the objective component of the test.

Regarding the subjective component, Kerr alleges that he wrote to all defendants explaining his medical conditions and requesting a transfer from Loft #2 to a cell but received no responses. Defendants Cook, Quiros, Rodriguez, Thibeault, Guadarama, and Vasquez are supervisory officials. As noted above, Kerr must show that each defendant, through his own

actions, violated his rights, that is, Kerr must show that each defendant was personally aware of and disregarded an excessive risk to his health.  Allegations that Kerr sent correspondence to these defendants, without more, i.e. an acknowledgement of receipt and a denial of the relief requested, is not enough to plausibly allege the subjective component of an Eighth Amendment claim. Kerr assumes that each defendant personally received and read his letters and thereafter engaged in a course of conduct from which the necessary *mens rea* can be inferred. Such an assumption does not give rise to a plausibly alleged constitutional violation. *See, Delee v. Hannigan*, 729 F. App'x 25, 32 (2d Cir. 2018) (affirming dismissal of supervisory liability claims for lack of personal involvement on motion to dismiss; "decision not to act on a letter he received from an inmate [is] insufficient to establish personal involvement by a supervisor") (citation omitted).   Accordingly, the claims against defendants Cook, Quiros, Rodriguez, Thibeault, Guadarama, and Vasquez are dismissed without prejudice.  Kerr may file an amended complaint to reassert his claims against these six defendants if he can allege facts which adequately allege their personal involvement in the alleged constitutional deprivations.

Kerr also names Drs. Wright and Fury.  As he alleges that these two defendants are doctors and he attached excerpts from his medical file to the complaint, the court will assume, for purposes of initial review only, that defendants Wright and Fury were aware of Kerr's medical issues.  Although it is unclear that either of these defendants had the authority to make custodial decisions regarding Kerr, the court will permit the federal claims against them to proceed for further development of the record.

**Osborn Medical Staff**

Kerr included the Osborn medical staff as a defendant.  To state a section 1983 claim,

7

Kerr must allege that his constitutional rights were violated by a person acting under color of state law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A medical entity or prison medical department is not a "person" under section 1983. *See Martin v. UConn Health Care*, No. 3:99-CV-2158(DJS), 2000 WL 303262, at *1-2 (D. Conn. Feb. 9, 2000) (UConn Health Care and Correctional Management is not a person within the meaning of section 1983) (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (state prison medical department is not a person for purposes of section 1983)); *see also Walker v. Bellnier*, No. 9:17-CV-1008(GTS/CFH), 2017 WL 5135702, at *11 n.14 (N.D.N.Y. Nov. 3, 2017) ("The use of the term, 'medical department" as a name for alleged defendants, without naming specific staff members, is not adequate to state a claim against a 'person' as required in § 1983 actions."); *Ferguson v. Morgan*, No. 90 Civ. 6318, 1991 WL 115759, at *1 (S.D.N.Y. June 20, 1991) (Otisville Correctional Facility medical staff not a person under section 1983). All claims against Osborn medical staff are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Request for Injunctive Relief**

Kerr seeks injunctive relief in the form of an order that he be transferred to a single cell with an open window. On April 20, 2020, the ACLU commenced a class action against the Department of Correction regarding the response to COVID-19. *McPherson, et al. v. Lamont, et al.*, No. 3:20-cv-534(JBA). The class, which was certified on July 20, 2020, includes "all persons who were incarcerated in a DOC facility from March 1, 2020, or are incarcerated, or in the future will be so incarcerated, until the termination of this Agreement December 31, 2020." *Id.* ECF No. 160-1, Modified Settlement Agreement and General Release, § J (internal quotation marks omitted). As Kerr was incarcerated during this time, he is a member of the class and

bound by the settlement agreement, which was approved by the court on July 21, 2020. *See McPherson*, Doc. No. 178.

Under the general release provisions, all class members have released Governor Lamont and all current and former employees of the Connecticut Department of Correction and the University of Connecticut Health Center from all claims for non-monetary relief "arising from acts or omissions alleged in the Complaint, or from acts or omissions that could have been litigated by the class in this action." *Id.* § H.  Kerr's request for injunctive relief is a claim "for non-monetary relief" relating to the COVID-19 response that was and/or could have been raised in the *MacPherson* habeas corpus action. *See, e.g., Rivera v. Commissioner of Corr.*, No. 3:20-cv-1333(SRU), 2021 WL 293254, at * (D. Conn. Jan. 27, 2021) (noting that inmate had filed state habeas action seeking medical treatment); *Crowder v. Farinella*, No. 3:17-cv-1135(VAB), 2017 WL 3392546, at *5 (D. Conn. Aug. 7, 2017) (same).  Thus, his request for injunctive relief is subject to the release and is dismissed.

### Other Official Capacity Claims

Kerr names all defendants in individual and official capacities.  However, he cannot seek damages from the defendants in their official capacities.  The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979).  Nor has Kerr alleged any facts suggesting that the state has waived immunity in this case.  Thus, all claims for damages against the state defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

Kerr also seeks declaratory relief, a statement that the defendants violated his rights. Declaratory relief operates prospectively. It is intended to enable parties to adjudicate claims before either party suffers significant damages. *Orr v. Waterbury Police Dep't*, No,. 3:17-cv-788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018) (citations omitted). In *Orr*, the court dismissed the request for declaratory relief because the request related only to past actions; the plaintiff had not identified any legal issue that could be resolved by declaratory relief. *Id.* As Kerr seeks a declaration that the defendants' past actions violated his rights, the request for declaratory relief is inappropriate[3] and dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Orders**

All claims against Senator Murphy and the Osborn medical staff, and the request for declaratory relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). All claims for damages against the defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). Kerr's request for injunctive relief is **DISMISSED** as barred under the settlement agreement and release filed in the class action.

The claims against defendants Cook, Quiros, Rodriguez, Thibeault, Guadarama, and Vasquez are **DISMISSED** without prejudice to Kerr filing an amended complaint if he can correct the deficiencies identified in this order. The case will proceed on the claims for damages for deliberate indifference to health or safety against defendants Wright and Fury in their

---

[3] The court notes that if Kerr were to prevail on any of his claims, a judgment in his favor would serve the same purpose as a declaration that the defendants had violated his rights regarding that claim. Thus, any request for declaratory relief is redundant. *See U.S. v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake Avenue, Greenwich, Connecticut*, 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

individual capacities.

The court enters the following additional orders.

(1)     **The Clerk shall** verify the current work address for defendants Wright and Fury with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided on or before **March 19, 2021**, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in her individual capacity and the defendant shall be required to pay the cost of such service.

(2)     T**he Clerk shall** send the plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **September 26, 2021**.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed by **October 26, 2021**.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of February 2021.

                                            /s/ Kari A. Dooley
                                            Kari A. Dooley
                                            United States District Judge